1   Peter Johnson, SBN No. 165523
    Law Office of Johnson & Johnson
2   2125 Oak Grove Rd. Ste. 315
    Walnut Creek, CA 94598
3   (t) 925.952.8900
    (f) 925.952.8902
4   peter@jjlaw2.com
    Attorney for Plaintiffs
5

6

7

8                    **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| 10  JOSEPH MALOTT | Case No. |
|          Plaintiff, | |
| 11 | COMPLAINT FOR DAMAGES |
|          v. | |
| 12 | FEDERAL CIVIL RIGHTS VIOLATIONS, 42 |
| 13  CITY OF WALNUT CREEK, CITY OF | USC 1983, 1985(3); VIOLATION OF FIRST, |
|     PITTSBURG, CITY OF SAN RAMON, CITY | FOURTH AND FOURTEENTH |
| 14  OF MARTINEZ, CONTRA COSTA | AMENDMENT OF THE U.S. CONSTITUION |
|     COUNTY, CITY OF PLEASANT HILL, WILL | AND STATE LAW CLAIMS |
| 15  APPEL, RANDY VILLA, MICHAEL | |
|     LINCOLN, JONATHAN ELMORE, | DEMAND FOR JURY TRIAL |
| 16  ANDREW GARTNER, PATRICK ESPIRITU, | |
|     JOHN CATTOLICO, ALEX SODERBERG, | |
| 17  GUY EZARD, ROBERT ROSAS, CURTIS | |
|     BORMAN, WILL MARRE, JARRED | |
| 18  PEREIRA, JAY HILL, THOMAS CHAPLIN, | |
|     TOM BREINIG, MANJIT SAPPAL, BRYAN | |
| 19  HILL, CRAIG STEVENS, KEITH | |
|     TESTERMAN, BRIAN ADDINGTON, CARY | |
| 20  GOLDBERG, SEATON FAJEAU | |
| 21  And Does 1 through 20 inclusive; | |
| 22          Defendants. | |

23

24

25

1

## I.   JURISDICTION and VENUE (Intra-district Assignment)

1. This is an action for monetary damages brought pursuant to Title 42 U.S.C. section 1981,

   1983, and 1988, and the First, Fourth and Fourteenth Amendments to the United States

   Constitution and under the common law of the State of California, and the California State

   Constitution Article 1 Section 28, against the City of Walnut Creek, County of Contra

   Costa, City of Pleasant Hill, City of San Ramon, City of Pittsburg, City of Martinez and

   police officers and officials employed by and acting on behalf of said cities and county.

2. Jurisdiction is based on the fact that this case involves a federal question regarding

   violation of civil rights under federal law under at least the 1st, 4th and 14th amendments to

   the US Constitution, 42 U.S.C. section 1981, 1983, 1988 and under 28 U.S.C. section 1331

   and 1343; The court has supplemental jurisdiction under 28 USC section 1367(a).

## II. SUMMARY OF ACTION

3. This action arises out of conduct occurring on or about June 1, 2020 when plaintiff, a

   young black male, was exercising his first amendment rights to free speech and peaceful

   assembly as part of a Black Lives Matter Protest in the City of Walnut Creek, California.

   Plaintiff was one of a few young black males among hundreds of participants in the protest.

   Walnut Creek is a predominantly non-black populated city. The City of Walnut Creek

   enlisted the Central County Swat Team and other neighboring police agencies in a military-

   like operation against civilians peacefully exercising their constitutional rights. The officers

   were unnecessarily over-equipped with significant and dangerous armament and being so

   equipped, felt compelled to use the armament, including snipers, batons, chemical agents,

   flash bombs, armored assault vehicles, riot gear, less lethal projectiles, gas masks, shields

and multiple K9; despite no need or justification for deploying or using such weaponry. The City of Walnut Creek confused matters by arbitrarily and covertly moving a curfew time up by two hours after the protest had already begun and unbeknownst to the protestors, this act in combination with the militaristic operation and use of dangerous armament by the police created a situation of utter chaos, including violence by police against peaceful citizens simply exercising their constitutional rights. The police then ultimately singled out Plaintiff, one of the few young black male participants and targeted him for police violence. Plaintiff was unjustifiably and violently attacked by multiple police officers and at least one police K9. Plaintiff was also struck by multiple projectiles, gassed and ultimately, unlawfully arrested and subjected to excessive force by several officers during the course of arrest, including the police purposely engaging the police K9 in a manner directed at inflicting significant injury to him. Plaintiff was taken to the Contra Costa County Jail and required to post bond. No criminal charges were ever filed.

4. At all times relevant, each of the individuals named as defendants herein were State Actors.

5. Plaintiff has received partial information from the various police agencies involved as part of a *redacted* report by the Walnut Creek Police Department. The police agencies have *withheld* body cam footage and other recordings related to the event and redacted names of potential witnesses and potential parties. Plaintiff has submitted a public records requests from the agencies and information has been withheld despite that request. As such, known persons listed as direct participants who violated plaintiffs rights are set forth in the paragraphs below. However there were many other officers whose identities are currently unknown, and who were involved by playing some role in the harm caused to plaintiff, as such plaintiff would anticipate listing further parties as they become known to him.

### III. PARTIES

6. Plaintiff, Joseph Mallot is a young black male adult residing in Walnut Creek, CA, Contra Costa County.

7. Defendant, City of Walnut Creek is a public entity and employs individuals within the Walnut Creek Police Department who are responsible for various acts and conduct alleged herein. Such individuals, listed below, were at all times acting in their individual capacity and on behalf of the City of Walnut Creek within the scope of their duties and their capacity as an employee, representative or agent of the City.

8. Defendant Will Appel, at all times relevant herein, was an officer for the City of Walnut Creek Police Department. He is sued in his individual and official capacity. Appel's conduct as alleged in this complaint occurred during performance of his duties for the City of Walnut Creek Police Department. Appel acted on behalf of the City of Walnut Creek, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Walnut Creek.

9. Defendant Guy Ezard, at all times relevant herein, was an officer for the City of Walnut Creek Police Department. He is sued in his individual and official capacity. Ezard's conduct as alleged in this complaint occurred during performance of his duties for the City of Walnut Creek Police Department. Ezard acted on behalf of the City of Walnut Creek, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Walnut Creek.

10. Defendant, Curtis Borman at all times relevant herein, was an officer for the City of Walnut Creek Police Department. He is sued in his individual and official capacity. Borman's conduct as alleged in this complaint occurred during performance of his duties for the City of Walnut Creek Police Department. Borman acted on behalf of the City of Walnut Creek, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Walnut Creek.

11. Defendant, Will Marre at all times relevant herein, was an officer for the City of Walnut Creek Police Department. He is sued in his individual and official capacity. Marre's conduct as alleged in this complaint occurred during performance of his duties for the City of Walnut Creek Police Department. Marre acted on behalf of the City of Walnut Creek, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Walnut Creek.

12. Defendant, Robert Rosas at all times relevant herein, was an officer for the City of Walnut Creek Police Department. He is sued in his individual and official capacity. Rosas' conduct as alleged in this complaint occurred during performance of his duties for the City of Walnut Creek Police Department. Rosas acted on behalf of the City of Walnut Creek, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Walnut Creek.

13. Defendant, Randy Villa at all times relevant herein, was an officer for the City of Walnut Creek Police Department. He is sued in his individual and official capacity. Rosas' conduct

as alleged in this complaint occurred during performance of his duties for the City of Walnut Creek Police Department. Rosas acted on behalf of the City of Walnut Creek, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Walnut Creek.

14. Defendant Jay Hill, currently acting Chief of Police, formerly Police Captain at all times relevant herein, was an officer for the City of Walnut Creek Police Department. He is sued in his individual and official capacity. Hill's conduct as alleged in this complaint occurred during performance of his duties for the City of Walnut Creek Police Department. Hill acted on behalf of the City of Walnut Creek, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Walnut Creek.

15. Defendant Thomas Chaplin, Chief of Police for City of Walnut Creek Police Department at all times relevant herein is sued in his individual and official capacity. Chaplin's conduct as alleged in this complaint occurred during performance of his duties for the City of Walnut Creek Police Department. Chaplin acted on behalf of the City of Walnut Creek, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Walnut Creek.

16. Defendant, City of Martinez is a public entity and employs individuals within the Martinez Police Department who are responsible for various acts and conduct alleged herein. Such individuals, listed below, were at all times acting in their individual capacity and on behalf

of the City of Martinez within the scope of their duties and their capacity as an employee, representative or agent of the City.

17. Defendant, Michael Lincoln at all times relevant herein, was a police officer and K9 officer for the City of Martinez Police Department. He is sued in his individual and official capacity. Lincoln's conduct as alleged in this complaint occurred during performance of his duties for the City of Martinez Police Department. Lincoln acted on behalf of the City of Martinez, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Martinez. Lincoln is the K9 officer responsible for handling police K9 "Jago" a K9 "officer" for the City of Martinez.

18. Defendant, Tom Breinig at all times relevant herein, was a police officer for the City of Martinez Police Department. He is sued in his individual and official capacity. Breinig's conduct as alleged in this complaint occurred during performance of his duties for the City of Martinez Police Department. Breinig acted on behalf of the City of Martinez, individually and in concert with other defendants named and unnamed herein;

19. Defendant, Manjit Sappal Chief of Police for City of Martinez Police Department at all times relevant herein is sued in his individual and official capacity. Sappal's conduct as alleged in this complaint occurred during performance of his duties for the City of Martinez Police Department. Sappal acted on behalf of the City of Martinez, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Martinez.

20. Defendant, City of Pleasant Hill is a public entity and employs individuals within the Pleasant Hill Police Department who are responsible for various acts and conduct alleged herein. Such individuals, listed below, were at all times acting in their individual capacity and on behalf of the City of Pleasant Hill within the scope of their duties and their capacity as an employee, representative or agent of the City.

21. Defendant Bryan Hill, Chief of Police for City of Pleasant Hill Police Department at all times relevant herein is sued in his individual and official capacity. Hill's conduct as alleged in this complaint occurred during performance of his duties for the City of Pleasant Hill Police Department. Hill acted on behalf of the City of Pleasant Hill, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Pleasant Hill.

22. Defendant, Andrew Gartner, at all times relevant herein, was an officer for the City of Pleasant Hill Police Department. He is sued in his individual and official capacity. Gartner's conduct as alleged in this complaint occurred during performance of his duties for the City of Pleasant Hill Police Department. Gartner acted on behalf of the City of Pleasant Hill, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Pleasant Hill.

23. Defendant, City of San Ramon is a public entity and employs individuals within the San Ramon Police Department who are responsible for various acts and conduct alleged herein. Such individuals, listed below, were at all times acting in their individual capacity and on

behalf of the City of San Ramon within the scope of their duties and their capacity as an employee, representative or agent of the City.

24. Defendant, Craig Stevens, Chief of Police for City of San Ramon Police Department at all times relevant herein is sued in his individual and official capacity. Stevens' conduct as alleged in this complaint occurred during performance of his duties for the City of San Ramon Police Department. Stevens acted on behalf of the City of San Ramon, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of San Ramon.

25. Defendant, Patrick Espiritu at all times relevant herein, was an officer for the City of San Ramon Police Department. He is sued in his individual and official capacity. Espiritu's conduct as alleged in this complaint occurred during performance of his duties for the City of San Ramon Police Department. Espiritu acted on behalf of the City of San Ramon, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of San Ramon.

26. Defendant, Seaton Fajeau at all times relevant herein, was an officer for the City of San Ramon Police Department. He is sued in his individual and official capacity. Fajeau's conduct as alleged in this complaint occurred during performance of his duties for the City of San Ramon Police Department. Fajeau acted on behalf of the City of San Ramon, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of San Ramon.

27. Defendant, Keith Testerman at all times relevant herein, was an officer for the City of San Ramon Police Department. He is sued in his individual and official capacity. Testerman's conduct as alleged in this complaint occurred during performance of his duties for the City of San Ramon Police Department. Testerman acted on behalf of the City of San Ramon, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of San Ramon.

28. Defendant John Cattolico, at all times relevant herein, was an officer for the City of San Ramon Police Department. He is sued in his individual and official capacity. Cattolico's conduct as alleged in this complaint occurred during performance of his duties for the City of San Ramon Police Department. Cattolico acted on behalf of the City of San Ramon, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of San Ramon.

29. Defendant Jarred Pereira, at all times relevant herein, was an officer for the City of San Ramon Police Department. He is sued in his individual and official capacity. Pereira's conduct as alleged in this complaint occurred during performance of his duties for the City of San Ramon Police Department. Perieira acted on behalf of the City of San Ramon, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of San Ramon.

30. Defendant Cary Goldberg, at all times relevant herein, was an officer for the City of San Ramon Police Department. He is sued in his individual and official capacity. Goldberg's

conduct as alleged in this complaint occurred during performance of his duties for the City of San Ramon Police Department. Goldberg acted on behalf of the City of San Ramon, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of San Ramon.  Goldberg was also the acting commander for Central County SWAT and acting in that capacity as well during the course of events alleged herein.

31. Defendant, City of Pittsburg is a public entity and employs individuals within the Pittsburg Police Department who are responsible for various acts and conduct alleged herein. Such individuals, listed below, were at all times acting in their individual capacity and on behalf of the City of Pittsburg within the scope of their duties and their capacity as an employee, representative or agent of the City.

32. Defendant, Brian Addington, Chief of Police for City of Pittsburg Police Department at all times relevant herein is sued in his individual and official capacity. Addington's conduct as alleged in this complaint occurred during performance of his duties for the City of Pittsburg Police Department. Addington acted on behalf of the City of Pittsburg, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Pittsburg.

33. Defendant, Jonathan Elmore at all times relevant herein, was an officer for the City of Pittsburg Police Department. He is sued in his individual and official capacity. Elmore's conduct as alleged in this complaint occurred during performance of his duties for the City of Pittsburg Police Department. Elmore acted on behalf of the City of Pittsburg,

individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County and the City of Pittsburg.

34. Contra Costa County is a public entity and employs individuals within the County of Contra Costa who are responsible for various acts and conduct alleged herein. Such individuals, were at all times acting in their individual capacity and on behalf of the County of Contra Costa within the scope of their duties and their capacity as an employee, representative or agent of the County.

35. The Central County S.W.A.T. team is made up of officers from various agencies within the Central County geographical area.  Walnut Creek, Pleasant Hill, San Ramon, Martinez are all contributors to the Central County SWAT team.  At all times relevant herein, defendants Appel, Guy, Gartner, Cattolico, Espiritu, Lincoln, Testerman, Borman, Marre, Soderberg were acting in a dual capacity for the city police department where they are employed as police officers and Deputy Sheriff for cities in the County of Contra Costa as part of the Central County SWAT team.  At all times relevant each of the defendants listed herein acted individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County.  In addition to the Central County Swat Unit another team of officers, Contra Costa County MAMFF were present and plaintiff alleges actively participated in the application of excessive force to plaintiff.  SWAT Team leaders consisted of at least Guy, Pereira, Ezard; Gary Goldberg was the acting commander of Central County SWAT at the time of events alleged herein.

36. Defendant, Alex Soderberg at all times relevant herein, was a Deputy with the Contra Costa County Sheriff's Department. He is sued in his individual and official capacity. Soderberg's conduct as alleged in this complaint occurred during performance of his duties for the County of Contra Costa. Soderberg acted on behalf of the Contra Costa County, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, Contra Costa County.

37. DOES 1-20, Deputies and Police Officers in Contra Costa County - geographic law enforcement agencies, were at all times relevant to this Complaint duly appointed and acting officers for the city and county they represent. Each of the officers were involved in at least some aspect of the circumstances leading to the excessive force, violation of civil rights, false arrest and the other constitutional violations alleged herein. Their names are unknown at this time. Plaintiffs will seek leave to amend when their names become known. They are sued in their individual and official capacities. Each of them was acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of California and/or Contra Costa County and/or city within the county.

38. Attached hereto and incorporated by reference are photographs of known and unknown officers responsible for the harm caused either individually or in concert inflicting harm to plaintiff. Unknown officers are listed as Doe Defendants herein.

39. At all times relevant herein, all defendants were acting in concert and conspired with one another and were jointly and severally liable for the injuries to plaintiff herein.

40. At all times relevant herein, all defendants were acting as agents of the other defendants, authorized to act thereby and were acting within the course and scope of said agency.

## IV. GENERAL ALLEGATIONS

41. On June 1, 2020 Joseph Mallot a young black man, who had grown up in the foster care system and was ultimately adopted into an affluent and disparately white community, was experiencing an exhilarating sense of belonging and understanding of who he is, by identifying with the Black Lives Matter awakening that spread throughout the country following the police killing of George Floyd and the protests that followed. This was an incredible moment for him as an individual, who had been treated differently and disparately his entire life.  This great moment was turned into a utter nightmare by overly armored and grossly armed, gung ho, police and sheriff's deputies bent on utilizing their armament against non-threatening American Citizens seeking to simply exercise their constitutional rights to assemble and protest.  In particular, given the opportunity, these government empowered agents were bent on retaliating against young black males for daring to protest against police militaristic armament and tactics.  In fact the refrain of the protestors included repeating "defund the police" and was taken as a personal affront by these heavily armored SWAT officers.

42. A peaceful protest was scheduled by the Black Lives Matter organizers in Walnut Creek on June 1, 2020.  Despite the fact the percentage of population for African Americans in Walnut Creek was less than 2%, Walnut Creek had become a central location for protests in light of the Walnut Creek Police unjustified shooting and killing of a mentally ill young black male, Miles Hall.  The response of the City and the Police in Walnut Creek to the shooting of Miles Hall has been a trigger for protests in Walnut Creek.

43. On June 1, 2020 the protest was organized, the participants respectful and peaceful.

44. On the date of the protest, June 1, 2020 Walnut Creek had a published curfew of 8:00 pm. At some point in time, after the protests had been going on for hours, Walnut Creek arbitrarily decided to change the curfew to 6:00 pm.. This action by the City of Walnut Creek was done in a manner not reasonably calculated to be communicated to protestors, but rather to serve the purpose of spurring law enforcement officers to deploy their military operation against the uninformed citizens.

45. The police for their part initially stood by with snipers on building tops, urban assault tactical tanks, gas masks, riot gear, police K9; Batons, "less lethal" gas devices; Tri-Chamber CS Gas Grenades; diversionary devices, Flash Bang devices, tear gas, 40 millimeter less lethal projectiles guns; CS Riot Smoke. The tactic of the police was to demonstrate a show of force and then to engage in heavy-handed militaristic tactics to gain immediate and unnecessary compliance with whatever their arbitrary demands were for behavioral control. The police engaged in these tactics despite the fact that studies for years have demonstrated that these tactics only lead to escalation of violence and in this case, heavily armed police vs. ordinary citizens. The police in this case created a chaotic circumstance and then used violence to control the very situation they created.

46. The police involved in this case were local Walnut Creek Police Officers acting in concert with Officers from several jurisdictions; most SWAT officers, predisposed, trained and equipped to engage in violent police response. At least San Ramon, Martinez, Hercules, Pittsburg, Pleasant Hill, Concord, BART and Contra Costa County Sheriffs were represented as part of the military operation.

47. The peaceful organized protest began in Civic Park in Downtown Walnut Creek. After several hours of speeches, peaceful calls to action and solidarity by the participants the core demonstration waned and protestors began to walk through the city streets carrying on their peaceful protest. A large facet of the group of protestors headed towards I680 and did peacefully and several safely entered the freeway after traffic was stopped. The motorists in the area joining in solidarity. Many officers taken aback by the stoppage of traffic on the freeway gathered and created a wall to press back the protestors. In order to facilitate the push back the officers deployed gas, flash bang devices, armored vehicles, and rubber bullet guns were used against the protestors. These armament deployments occurred despite the cooperation of the protestors in yielding to the commands of the officers and exiting the freeway, and freeway area.

48. Either Officer Pereria or Wickman, both of whom are believed to have been operating armored assault vehicles, threatened to run over a protestor who did not move immediately out of the way. The Walnut Creek police in response to allegations that the armored assault vehicle was being used to threaten protestors posted misleading footage on the news. The officer clearly stated "move or you will be dead" but footage played on the news stated "move or you will be gassed". This was just one of many fabrications that have been brought forward by law enforcement and the multiple jurisdictions in their representations in the media and in their reports of this incident.

49. The officers started deploying gas, flash bang devices and rubber bullets even after protestors were clearly yielding to their requests; and well before the newly invoked 6:00 curfew; and even after the citizen protestors, including plaintiff were trying to leave the scene in peace. The officers simply would not let them leave the scene in peace; The

officers continued to use their gas, threats, flash bang and rubber bullets as a demonstration of force in retaliation for the defund the police protest movement.

50. The officers shot out the window of a vehicle with a rubber bullet and tried to blame the citizen protestors.

51. Police also shot a young woman in the face with a rubber bullet causing serious injuries. Plaintiff tried to assist the young woman delaying his retreat and causing police to utilize more force against him and other individuals.

52. A young Caucasian woman sensing the danger to plaintiff, a young black male, spread her arms out and acted as a human shield between the police and plaintiff.

53. This young lady herself was subjected to excessive force and false arrest for her part in trying to protect plaintiff from the police attack.

54. Plaintiff along with the other protestors were subjected to an onslaught of gas, flash bang, rubber bullets and other devices misused and abused in a manner of inflicting violence upon the ordinary citizen protestors.

55. The protestors consisted of young teens, older women and older men, young adults, male and female and largely non-black citizens. Because of the demographics of the protestors, Plaintiff clearly stuck out to the police as one of the few young black males in the group.

56. The protestors were cooperating with police. The protestors were yielding to the commands of the police. Despite this clear cooperation by the protestors, the police being predisposed to use their weapons in a violent manner pressed forward with gas, flash bang and rubber bullets in an effort to punish the protestors for what the officers perceived as a defiant act of a personal nature against themselves as police.

57. The protestors did not threaten nor harm anyone; Yet were threated and harmed by the police. Several protestors were arrested however none were subjected to the purposeful level of violence directed at the one black person arrested, Plaintiff.

58. Like other protestors, the plaintiff while retreating was subjected to unwarranted gassing, flash bang exposure, and being struck by multiple rubber bullets.

59. Like other protestors, the plaintiff while retreating had a gas canister "grenade" thrown at him and others with him. Like other protestors plaintiff's eyes were burning and throat burning from the exposure; Like other protestors plaintiff threw back a canister to get it away from his fellow protestors. Unlike other protestors plaintiff was a black male. Unlike other protestors plaintiff was literally attacked by several officers and a police K9 despite simply walking away from the scene just like the other protestors.

60. Only one protestor that day was attacked by the police in such a violent manner, struck multiple times with rubber bullets, struck with a police baton, taken down by at least 3 officers and had his flesh torn from biting and scratching by the police K9.

61. Plaintiff did nothing to justify the attack by the police or the level of violence to which he was subjected.

62. Following the attack plaintiff was arrested and taken to jail despite his injuries and the fact that the arrest was baseless. Plaintiff had to post significant bail and charges were not prosecuted however he was incarcerated wrongfully for several days and because bail was set so high, he had to use the assistance of a bondsmen and forfeited the bail fee.

63. Plaintiff filed tort claims with various jurisdictions however has not received a response and statutory time for responding has expired.

## V. DAMAGES

64. Plaintiff has incurred and will continue to incur substantial attorney's fees and costs associated with prosecuting these lawful claims pursuant to state and federal law including 42 USC 1983, 1985 and 1988.

65. As a result of Defendants' violation of Plaintiff's' federal civil rights under 42 USC 1983, the 4th amendment and the Fourteenth Amendment to the U.S. Constitution; 42 USC 1985(3), Plaintiff has experienced permanent scars both physically and mentally.

66. Plaintiff is entitled to recover damages for scarring, pain, mental suffering, humiliation, duress, out of pocket loss and other compensatory damages economic and non-economic damages according to proof;

67. At all times herein referenced the defendants acted in reckless disregard of plaintiff's constitutional rights. Plaintiff is entitled to punitive and exemplary damages according to proof.

### VI. FIRST CAUSE OF ACTION
### 42 U.S.C. 1983 – 4TH AMENDMENT
### EXCESSIVE FORCE – RETALIATION EXERCISE FIRST AMENDMENT
### AS TO DEFENDANTS APPEL, SODERBERG AND ELMORE and Does 1-20

68. Paragraphs 1 through 66 are incorporated by reference as though fully set forth herein.

69. Defendant's Appel, Soderberg and Elmore each of them physically attacked Mr. Malott in order to effectuate an unlawful arrest against him.

70. Mr. Malott was compliant and notwithstanding that compliance was physically attacked by these officers acting in concert with one another.

71. No amount of force was necessary in order to place Mr. Malott into custody. Notwithstanding the illegality of the arrest, Mr. Malott did not resist or flee or otherwise create a risk to the officers or any other person.

72. Mr. Malott was simply engaging in an exercise of his first amendment rights and did nothing to justify the illegal violent retaliatory response by the police.

73. Defendant Elmore struck Mr. Malott with a baton in the back, for the sole purpose of inflicting pain on him as he was already in the custody of Appel and Soderberg.

74. Defendant Soderberg and Appel physically struck Mr. Malott and took him to the ground smashing him into the concrete and holding him there to facilitate a police K9 Jago biting, clawing and digging into his skin.

75. Plaintiff re-alleges the damages claims set forth in paragraphs 64-67 above.  Plaintiff further alleges the conduct of the named defendants was malicious, oppressive, and undertaken with reckless disregard for the rights and safety of plaintiff entitling plaintiff to an award of punitive damages.

76. Wherefore plaintiffs pray as hereinafter specified.

### VII.    SECOND CAUSE OF ACTION
### 42 U.S.C. 1983 – FOURTH AMENDMENT – EXCESSIVE FORCE
### DEFENDANT LINCOLN – RETALIATION EXERCISE 1ST AMENDMENT

77. Paragraphs 1 through 75 are incorporated by reference as though fully set forth herein;

78. Defendant Lincoln is the K9 handler for Jago, a police K9 at the Martinez Police Department.

79. Defendant Lincoln and K9 Jago attacked plaintiff despite the fact at least three other officers were already physically attacking plaintiff in order to subdue him into custody.

80. There was no justification for the deployment by Lincoln of K9 Jago against Mr. Malott.

81. The reason Lincoln ordered K9 Jago to attack plaintiff was to retaliate for the exercise of his first amendment rights; and to purposely inflict injury and pain upon him.

82. Lincoln intentionally utilized K9 Jago in a manner that was directed at intentionally inflicting harm to plaintiff as opposed to any level of justifiable conduct in lawful response to plaintiff's actions.

83. Plaintiff did not resist, flee or otherwise do anything to justify the use of force against him and particularly not in the excessive manner in which it occurred.  Plaintiff was bitten multiple times and suffered deep clawing and scratching on his back, leaving permanent scars on his leg and back.

84. Plaintiff re-alleges the damages claims set forth in paragraphs 64-67 above.  Plaintiff further alleges the conduct of the named defendant was malicious, oppressive, and undertaken with reckless disregard for the rights and safety of plaintiff entitling plaintiff to an award of punitive damages.

85. Wherefore plaintiffs pray as hereinafter specified.

### VIII. THIRD CAUSE OF ACTION
### 42 USC 1983 – EXCESSIVE FORCE – RETALIATION EXERCISE 1ST AMENDMENT DEPLOYMENT OF CHEMICAL AGENTS, FLASH BANG AND LESS LETHAL WEAPONS
### DEFENDANTS APPEL, ROSAS, GARTNER, CATTOLICO, ESPIRITU, FAJEAU

86. Plaintiffs hereby incorporates all allegations set for in paragraphs 1-85 above as if fully set forth herein.

87. The defendants listed hereunder each deployed chemical agents, gas grenades, flash bangs and/or less lethal rounds.  The deployment of this armament and weaponry was entirely unnecessary and unjustified. The defendants were predisposed to deploy these weapons in a violent manner against citizens exercising their first amendment rights to challenge the policies and actions of the government, and in this case specifically protesting against police violence as part of the "defund the police" movement stemming from the death of

George Floyd; and located in Walnut Creek due to protest against prior misconduct against a young black male. Their predisposition stemmed from retaliation against the concerted movement initiated by Black Lives Matter criticizing police for the very heavy-handed tactics the police used in this instance; and persistent protest against the non-action in the matter of Miles Hall.

88. Each of the named defendants herein deployed, chemical agents, flash bang and/or less lethal rounds directly effecting or striking plaintiff.

89. Defendant Gartner deployed numerous Less Lethal 40 mm rounds; Chemical Agents; CS Grenades; and CS Gas to which Plaintiff was exposed and/or contacted;

90. Defendant Appel deployed Less Lethal 40 mm rounds, directly striking plaintiff;

91. Defendant Cattolico deployed an incredible amount of Chemical Agent Tri-Chamber Flameless Grenades; Flash Bang; Less Lethal eXact Impact 40 mm rubber bullets; and physically struck a protestor with the butt of his less lethal rifle, exposing and affecting plaintiff;

92. Defendant Espiritu deployed chemical agents and eXact Impact 40mm less lethal bullet directly affecting plaintiff;

93. Defendant Fajeau deployed chemical agents and eXact Impact 40 mm less lethal bullet directly affecting plaintiff;

94. Plaintiff did nothing to justify the deployment of less lethal rounds, chemical agents and flash bang devices. The use of the less lethal rounds, chemical agents and flash bang devices was not directed at addressing any threat or illegal act justifying such use, but rather used in retaliation for protesting police violence.

95. Plaintiff re-alleges the damages claims set forth in paragraphs 64-67 above. Plaintiffs further allege the conduct of the named defendants was malicious, oppressive, and undertaken with reckless disregard for the rights and safety of plaintiffs entitling plaintiffs to an award of punitive damages.

96. Wherefore plaintiffs pray as hereinafter specified.

## IX. FOURTH CAUSE OF ACTION
## CONSPIRACY TO VIOLATE CIVIL RIGHTS
## ALL DEFEDANTS
## 42 USC SECTION 1983

97. Plaintiff hereby incorporate the allegations set forth in paragraphs 1- 96 above as if set forth fully herein.

98. Defendants conspired to violate Plaintiff's civil rights.

99. The roles of the various defendants was mostly dependent upon their position, however all contributed in some significant manner to the violations complained of herein.

100. Over 100 officers met before the protest and set up their militaristic operation. Present were at least Walnut Creek Police Officers, multi-jurisdictional Central County SWAT officers and multi-jurisdictional MAMFF SWAT officers;

101. The officers deployed in several locations, including downtown and then later as many of the protestors marched toward the freeway many of the officers deployed to that location. The officers at both locations used their armament to exact a forceful and violent response on protestors. Over 20 officers or more set up a so called "skirmish" line near the freeway and pushed back the protestors using gas, flash bang devices and rubber bullets, armored vehicles were used as well as K-9 in a concerted effort to stamp down the legitimate protest to which plaintiff was a part. The officers instigated and effectuated violence upon the protestors, including plaintiff and did so in a concerted effort.

102. Additionally, prior to attacking plaintiff the officers communicated their intent to go after him and then worked together to carry out the attack.

103. The officers ultimately singled out plaintiff and decided together to attack him both personally and with the assistance of police K9 Jago.

104. The officers not physically hands on with plaintiff, shielded the other officers while they attacked plaintiff and physically prevented other citizens from coming to plaintiff's aid, surrounded plaintiff so the officers physically attacking him could do so without witnesses including physically restraining persons and turning them away so as not to see the violence being acted upon plaintiff.

105. The officers in a concerted effort to justify their conduct disrupted audio and video recordings, manipulated footage and communicated with one another to fabricate a report (consisting of at least the following agencies' reports – Walnut Creek, San Ramon, Pleasant Hill, Martinez and Pittsburg); with said report depicting a picture of a defiant, resisting and combative person (plaintiff) being subjected to justifiable force. The reports also include fabrication to paint a false picture of the protestors threating or attacking officers, which reports are clearly false. The reports have been fabricated and have been done so through a concerted effort of cooperation between the various agencies in order to protect one another for their part in the violation of constitutional rights of plaintiff as articulated herein.

106. Plaintiff re-alleges the damages claims set forth in paragraphs 64-67 above.  Plaintiffs further allege the conduct of the named defendants was malicious, oppressive, and undertaken with reckless disregard for the rights and safety of plaintiffs entitling plaintiffs to an award of punitive damages.

107. Wherefore plaintiffs pray as hereinafter specified.

## X. FIFTH CAUSE OF ACTION
## CONSPIRACY TO VIOLATE CONSTITIONAL RIGHTS
## BASED ON RACE – 42 USC SECTION 1983; 1985(3)
## ALL DEFENDANTS

108.  Plaintiff hereby incorporate the allegations set forth in paragraphs 1-107 above as if set

forth fully herein.

109.  Despite the fact the City of Walnut Creek has a population of less than 2% black it has

been a center for protests stemming initially from the police killing of a young black man

suffering from mental illness, Miles Hall. By and large the demographic of the protestors

tend to be 20 something white males and white females, but also include several minority

classes with differing numerical representation of low numbers.  Included in the larger,

Black Lives Matter protest that occurred on June 1, 2020 were a much greater

representation than normal persons identifiable as of black race. The very anticipation of

this fact led the City of Walnut Creek to enlist SWAT and MAMFF officers from

throughout the County as part of a militaristic operation bent on exercising great and

violent force upon protestors.

110.  The protest itself was clearly focused on the manner in which police throughout the

country and more specifically in Walnut Creek disparately treat young people of color, and

more specifically those identified of the black race, generally young black men in an

unjustifiably violent manner.

111.  The police response to the planning of the protest was to show up in full SWAT gear,

with Armored Vehicles, helicopters and drones, Snipers, K9, gas masks, full riot armament

and deploy them against citizens.

112.  Rather than irony, it was inevitable that at a "defund the police" rally, stemming from

police violence against black men, in a military type operation with full display of

expensive and unnecessary military type equipment; that a young black man would be attacked by police officers and a police K9.

113. While many of the protestors were the target of the heavy-handed tactics of the military operation, it was a young black male, plaintiff that was the intentional target of the infliction of significant injury and harm in retaliation for being a young black man protesting against police violence.

114. The attack on plaintiff and unquestionably the level of violence to which he was subjected was based on his race.

115. Plaintiff re-alleges the damages claims set forth in paragraphs 64-67 above.  Plaintiffs further allege the conduct of the named defendants was malicious, oppressive, and undertaken with reckless disregard for the rights and safety of plaintiffs entitling plaintiffs to an award of punitive damages.

## XI. SIXTH CAUSE OF ACTION
## MONELL CLAIM AS TO CITY OF WALNUT CREEK
## 42 USC SECTION 1983

116. Plaintiffs hereby incorporate all allegations set forth in paragraphs 1-115 above as if set forth fully herein.

117. The violations of plaintiff's constitutional rights as alleged herein under the First and Fourth amendment to the US Constitution, plaintiff's damages, and the conduct of the individual defendant employees, representatives and agents of the City of Walnut Creek were directly and proximately caused by the actions and/or inaction of defendant City of Walnut Creek, which has encouraged tolerated, ratified and has been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation or discipline in the areas of:

    a.   Use of force against persons exercising their first amendment rights;

    b.   Use of K9 in the context of public rallies and protest;

    c.   Use of gas, flash bang, gas grenades, less lethal projectiles, snipers, armored vehicles and other armament;

    d.   Illegal seizure;

    e.   Use of force in engaging in arrest;

    f.   Peaceful crowd control;

    g.   Fabrication of police reports;

    h.   Proper use of Body Worn Cameras or other recordings devices;

    i.   Fabrication of evidence by manipulation of recording devices;

    j.   Racial discrimination in police contact with citizens;

118.  The City of Walnut Creek, through the chief of police, high ranking police supervisory personnel and the city council brought in over 100 SWAT and MAMFF SWAT officers, highly equipped and predisposed to violence for the sole purpose of "controlling" citizens engaging in peaceful protests within the City of Walnut Creek; The City of Walnut Creek did so out of fear; a fear that irrationally stemmed from the fact that the city is predominately white and affluent and the rally at issue was in protest of the manner in which law enforcement violently mistreats black males; The City of Walnut Creek would be filled with people of color and people of all races protesting against the treatment by the City's police force against black men.  The representatives in the City, including the Chief of Police, acting Chief of Police and the City Council were all aware that protestors would challenge the authority of the police through this protest and based on their irrational fear and unwarranted perception that the otherwise peaceful protestors would rely on violence

to carry out this message brought in an army battalion of SWAT officers predisposed to violence and fully equipped to carry it out against ordinary citizens.

119.  The City and law enforcement officials were aware that the concerted effort of the law enforcement presence would result in violence against citizens but chose to go forth in this manner as opposed less intrusive means of protecting citizens constitutional rights; and avoiding unnecessary injury to citizens.

120.  The heavy-handed tactics were not only sought out by the representatives of the City of Walnut Creek and Walnut Creek law enforcement officials, but moreover were facilitated by the City's resources and policies.

121.  In addition to the heavy-handed tactics the City of Walnut Creek instituted a last minute arbitrary, unwarranted and mis-executed curfew for the purpose of creating an opportunity for the military operation to kick into full motion while there were many "undesirables" still within the city limits.

122.  The persons responsible for the City's actions and policies were policy makers and high ranking supervisory personnel of law enforcement and within the City administration.

123.  As a result of the City of Walnut Creek's failures in these areas the plaintiff has suffered severe and substantial emotional distress damages, compensatory damages and other damages according to proof at time of trial.

### XII. SEVENTH CAUSE OF ACTION
### MONELL CLAIM AS TO CITIES OF
### PLEASANT HILL, SAN RAMON, PITTSBURG
### 42 USC SECTION 1983

124.  Plaintiff hereby incorporates all allegations set forth in paragraphs 1-123 above.

125.  The violations of plaintiff's constitutional rights as alleged herein under the First and Fourth amendment to the US Constitution, plaintiff's damages, and the conduct of the

individual defendant employees, representatives and agents of the Cities listed herein were directly and proximately caused by the actions and/or inaction of defendant Cities, which have encouraged, tolerated, ratified and have been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation or discipline in the areas of:

    a.   Use of force against persons exercising their first amendment rights;

    b.   Use of K9 in the context of public rallies and protest;

    c.   Use of gas, flash bang, gas grenades, less lethal projectiles, snipers, armored vehicles and other armament;

    d.   Illegal seizure;

    e.   Use of force in engaging in arrest;

    f.   Peaceful crowd control;

    g.   Fabrication of police reports;

    h.   Proper use of Body Worn Cameras or other recordings devices;

    i.   Fabrication of evidence by manipulation of recording devices;

    j.   Racial discrimination in police contact with citizens;

126.  The Cities listed herein were aware of the tactics and acted in accord and deference to the City of Walnut Creek, through its chief of police and the city council to bring in over 100 SWAT and MAMFF SWAT officers, including officers from the cities listed herein, highly equipped and predisposed to violence for the sole purpose of "controlling" citizens engaging in peaceful protests within the City of Walnut Creek; The cities listed herein facilitated his operation despite knowledge City of Walnut Creek was motivated by fear; a fear that irrationally stemmed from the fact that the city is predominately white and affluent

and the rally at issue was in protest of the manner in which law enforcement violently mistreats black males; These listed cities knew the City of Walnut Creek would be filled with people of color and people of all races protesting against the treatment by all the Cities' police forces against black men.  The representatives in Walnut Creek, including the Chief of Police, acting Chief of Police and the City Council were all aware that protestors would challenge the authority of the police through this protest and based on their irrational fear and unwarranted perception that the otherwise peaceful protestors would rely on violence to carry out this message brought in an army battalion of SWAT officers predisposed to violence and fully equipped to carry it out against ordinary citizens. These cities shared that understanding and yet facilitated the operation.

127.  The Cities and their law enforcement officials were aware that the concerted effort of the law enforcement presence would result in violence against citizens but chose to facilitate the City of Walnut Creek in going forth in this manner as opposed to employing less intrusive means of protecting citizens constitutional rights; and avoiding unnecessary injury to citizens.

128.  The heavy-handed tactics were not only sought out by the representatives of the City of Walnut Creek and Walnut Creek law enforcement officials, but moreover were facilitated by the City's resources and policies.  The cities listed herein were aware of this and facilitated this policy and action by providing their own resources to assist Walnut Creek in meeting its demand of the moment.

129.  The persons responsible for the Cities' actions and policies were policy makers and high ranking supervisory personnel of law enforcement and within the City administration.

130. The cities not only facilitated the military like operation but also ratified the conduct after they learned what had occurred.

131. As a result of these cities' failures in these areas the plaintiff has suffered severe and substantial emotional distress damages, compensatory damages and other damages according to proof at time of trial.

### XIII. EIGTH CAUSE OF ACTION
### MONELL CLAIM AS TO CITY OF MARTINEZ
### 42 USC SECTION 1983

132. Plaintiff hereby incorporates all the allegations set forth in paragraphs 1-131 set forth above as if fully set forth herein.

133. The violations of plaintiff's constitutional rights as alleged herein under the First and Fourth amendment to the US Constitution, plaintiff's damages, and the conduct of the individual defendant employees, representatives and agents of the Cities listed herein were directly and proximately caused by the actions and/or inaction of defendant Cities, which have encouraged, tolerated, ratified and have been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation or discipline in the areas of:

   a. Use of force against persons exercising their first amendment rights;

   b. Use of K9 in the context of public rallies and protest;

   c. Use of gas, flash bang, gas grenades, less lethal projectiles, snipers, armored vehicles and other armament;

   d. Illegal seizure;

   e. Use of force in engaging in arrest;

   f. Peaceful crowd control;

g.  Fabrication of police reports;

h.  Proper use of Body Worn Cameras or other recordings devices;

i.  Fabrication of evidence by manipulation of recording devices;

j.  Racial discrimination in police contact with citizens;

134.  The City of Martinez in particular was aware of the violent tenancies of K9 Jago under the supervision of Lincoln and that despite being aware of the violent and unlawful tenancies continued to deploy Lincoln and K9 Jago, including the deployment on this occasion described herein.

135.  The City of Martinez failed to adequately supervise Lincoln and K9 Jago and once learned of his conduct in this case ratified said conduct.

136.  The ratification of the unlawful conduct of Lincoln and his deployment of Jago in this case was done both by policy making persons in the police department including the police chief, but also policy making officials in the City of Martinez. Such ratification and tolerance of the misconduct occurred despite the fact the City was aware that Lincoln violated the City of Martinez Police K9 policy.

137.  The City of Martinez was aware of and acted in accord and deference to the City of Walnut Creek, through its chief of police and the city council to bring in over 100 SWAT and MAMFF SWAT officers, including officers from the City of Martinez, highly equipped and predisposed to violence for the sole purpose of "controlling" citizens engaging in peaceful protests within the City of Walnut Creek; The City of Walnut Creek did so out of fear; a fear that irrationally stemmed from the fact that the city is predominately white and affluent and the rally at issue was in protest of the manner in which law enforcement violently mistreats black males; The City of Walnut Creek would

be filled with people of color and people of all races protesting against the treatment by the City's police force against black men. The representatives in the City, including the Chief of Police, acting Chief of Police and the City Council were all aware that protestors would challenge the authority of the police through this protest and based on their irrational fear and unwarranted perception that the otherwise peaceful protestors would rely on violence to carry out this message brought in an army battalion of SWAT officers predisposed to violence and fully equipped to carry it out against ordinary citizens.

138. The City of Martinez and their law enforcement officials were aware that the concerted effort of the law enforcement presence would result in violence against citizens but chose to facilitate the City of Walnut Creek in going forth in this manner as opposed less intrusive means of protecting citizens constitutional rights; and avoiding unnecessary injury to citizens.

139. The heavy-handed tactics were not only sought out by the representatives of the City of Walnut Creek and Walnut Creek law enforcement officials, but moreover were facilitated by the City's resources and policies. The City of Martinez was aware of this and facilitated this policy and action by providing their own resources to assist Walnut Creek in meeting its demand of the moment.

140. The persons responsible for the City of Martinez' actions and policies were policy makers and high ranking supervisory personnel of law enforcement and within the City administration.

141. The City of Martinez not only facilitated the military like operation but also ratified the conduct after they learned what had occurred.

142.  As a result of these City of Martinez' failures in these areas the plaintiff has suffered severe and substantial emotional distress damages, compensatory damages and other damages according to proof at time of trial.

### XIV. NINTH CAUSE OF ACTION
### INTERFERENCE WITH CIVIL RIGHTS
### CALIFORINA CIVIL CODE SECTION 52.1 "THE BANE ACT"
### ALL DEFENDANTS

143.  Plaintiff hereby incorporates all allegations set forth in paragraphs 1-141 above as if fully set forth herein.

144.  Defendants' above-described conduct constituted interference, and attempted interference, by threats, intimidation, coercion and force with the Plaintiff's peaceable exercise and enjoyment of rights to due process, equal protection of the laws, to be free from state action that shocks the conscience and to life, liberty and property secured by the Constitution and laws of the State of California and the United States, all in violation of California Civil Code section 52.1.

145.  Plaintiff re-alleges the damages claims set forth in paragraphs 64-67 above.  Plaintiff further alleges the conduct of the named defendant was malicious, oppressive, and undertaken with reckless disregard for the rights and safety of plaintiff entitling plaintiff to an award of punitive damages.

146.  Wherefore plaintiffs pray as hereinafter specified.

### XIV. TENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION EMOTIONAL DISTRESS
### DEFENDANTS CATTOLICO, ESPIRITU, GARTNER, APPEL, LINCOLN, FAJEAU
### SODERBERG, BREINIG, EZARD, ELMORE, VILLA, ROSAS, MARRE, BOREMAN

147.  The plaintiff hereby incorporates all allegations set forth in paragraphs 1-146 above as if set forth fully herein.

148. The conduct of defendants as described above was intentional conduct. The defendants were aware they had a duty towards plaintiff and intentionally violated that duty.

149. The conduct was extreme and outrageous behavior all beyond all common decency.

150. The conduct resulted in extreme and substantial emotional distress to plaintiff.

151. Plaintiff has suffered substantial mental suffering and humiliation. Plaintiff's damages include economic and non-economic damages. The conduct of defendant was intentional, reckless, malicious and deliberate and justifies and award of punitive and exemplary damages.

## XV. ELEVENTH CAUSE OF ACTION
## MONNELL CLAIM AS TO THE COUNTY OF CONTRA COSTA
## 42 USC SECTION 1983

152. Plaintiff hereby incorporates all allegations set forth in paragraphs 1-151 above as if set forth fully herein.

153. The violations of plaintiff's constitutional rights as alleged herein under the First and Fourth amendment to the US Constitution, plaintiff's damages, and the conduct of the individual defendant employees, representatives and agents of Contra Costa County were directly and proximately caused by the actions and/or inaction of defendant Contra Costa County, which have encouraged, tolerated, ratified and have been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation or discipline in the areas of:

   a. Use of force against persons exercising their first amendment rights;

   b. Use of K9 in the context of public rallies and protest;

   c. Use of gas, flash bang, gas grenades, less lethal projectiles, snipers, armored vehicles and other armament;

   d.  Illegal seizure;

   e.  Use of force in engaging in arrest;

   f.  Peaceful crowd control;

   g.  Fabrication of police reports;

   h.  Proper use of Body Worn Cameras or other recordings devices;

   i.  Fabrication of evidence by manipulation of recording devices;

   j.  Racial discrimination in police contact with citizens;

   k.  Mulit-jurisdictional police force operations;

154. The County of Contra Costa was aware of and acted in accord and deference to the City of Walnut Creek, through its chief of police and the city council to bring in over 100 SWAT and MAMFF SWAT officers, including officers from the Contra Costa County Sheriff Department and multiple agencies throughout the county, highly equipped and predisposed to violence for the sole purpose of "controlling" citizens engaging in peaceful protests within the City of Walnut Creek; The City of Walnut Creek did so out of fear; a fear that irrationally stemmed from the fact that the city is predominately white and affluent and the rally at issue was in protest of the manner in which law enforcement violently mistreats black males; The City of Walnut Creek would be filled with people of color and people of all races protesting against the treatment by the City's police force against black men.  The representatives in the City, including the Chief of Police, acting Chief of Police and the City Council were all aware that protestors would challenge the authority of the police through this protest and based on their irrational fear and unwarranted perception that the otherwise peaceful protestors would rely on violence to carry out this message

brought in an army battalion of SWAT officers predisposed to violence and fully equipped to carry it out against ordinary citizens.

155. The County of Contra Costa and their law enforcement officials were aware that the concerted effort of the law enforcement presence would result in violence against citizens but chose to facilitate the City of Walnut Creek in going forth in this manner as opposed less intrusive means of protecting citizens constitutional rights; and avoiding unnecessary injury to citizens.

156. The heavy-handed tactics were not only sought out by the representatives of the City of Walnut Creek and Walnut Creek law enforcement officials, but moreover were facilitated by the City's resources and policies. The County of Contra Costa was aware of this and facilitated this policy and action by providing their own resources to assist Walnut Creek in meeting its demand of the moment.

157. The persons responsible for the Contra Costa County's actions and policies were high level supervisory and policy makers at the level of law enforcement and within the County administration.

158. The County of Contra Costa not only facilitated the military like operation but also ratified the conduct after they learned what had occurred.

159. As a result of these County of Contra Costa's failures in these areas the plaintiff has suffered severe and substantial emotional distress damages, compensatory damages and other damages according to proof at time of trial.

## XVI. TWELTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**DEFENDANTS CATTOLICO, ESPIRITU, GARTNER, APPEL, LINCOLN, FAJEU, SODERBERG, BREINIG, EZARD, ELMORE, VILLA, ROSAS, MARRE, BORMAN,**

160. Plaintiffs hereby incorporate all allegations set forth in paragraph 159 above as if fully set forth herein.

161. The defendants had a duty of reasonable care towards plaintiff.

162. The defendants failed to exercise reasonable care as set forth above.

163. As a result of defendants' conduct, plaintiff has suffered substantial emotional distress and mental suffering.

164. Plaintiff has suffered mental distress and humiliation and his damages include both economic and non-economic harm.

## XVII. THIRTEENTH CAUSE OF ACTION
### ASSAULT AND BATTERY
**DEFENDANTS ELMORE, LINCOLN, ESPIRITU GARTNER, APPEL, CATTOLICO, SODERGERG**

165. Plaintiff hereby incorporates all allegations set forth in paragraphs 1-163 above as if set forth fully herein.

166. The defendants intentionally engaged in conduct towards plaintiff that put him in apprehension of harm and that physically touch him in an offensive and harmful manner;

167. The apprehension and touching was non-consensual;

168. The apprehension and touching resulted in substantial physical and emotional injuries;

169. Plaintiff has suffered substantial mental distress and humiliation and physical scarring and other physical injuries.

170. Plaintiff's damages include economic and non-economic damages.

171. The conduct of defendants was intentional, reckless, malicious and deliberate and justifies an award of punitive and exemplary damages.

**WHEREFORE, the Plaintiff requests he be awarded damages as follows:**

1.  Plaintiff seeks compensatory damages for economic and non-economic harm to plaintiff against the Individual Defendants and the public entities jointly and severally according to proof;

2.  Punitive and exemplary damages against individual defendants according to proof on the following claims: Causes of Action One through Five, Nine, Ten and Thirteen and as otherwise ordered by the Court;

3.  Costs incurred in the prosecution of this complaint;

4.  Reasonable attorney's fees on all relevant causes of action per 42 USC 1988; and any other appropriate statute;

5.  Reasonable attorney's fees pursuant to Civil Code section 52.1 et. seq.

6.  Such other and further relief as this Court may deem appropriate.

Dated: March 8, 2021                                     /S/  Peter Johnson
                                                        Peter Johnson
                                                        Attorney for Plaintiff


PLAINTIFF HEREBY DEMANDS A JURY TRIAL

Dated: March 8, 2021                                     /s/ Peter Johnson
                                                        Peter Johnson
                                                        Attorney for Plaintiff

























